IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SASHAWN WILLIAMS,

        Petitioner,

   v.

WARDEN, Mansfield Correctional Institution,

        Respondent.

CASE NO. 2:13-CV-113
Judge Michael H. Watson
Magistrate Judge Elizabeth A. Preston Deavers

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, Respondent's *Return of Writ,* Petitioner's *Traverse,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DENIED** and that this action be **DISMISSED.**

### I. FACTS AND PROCEDURAL HISTORY

The Ohio Court of Appeals for the Tenth District summarized the facts and procedural history of this case as follows:

> Appellant was indicted on the following: (1) four counts of aggravated robbery, with firearm specifications, pertaining to a July 8, 2008 incident at Grandad's Pizza; (2) one count of aggravated robbery, and a firearm specification, for a July 22, 2008 incident at a CVS Pharmacy; (3) nine counts of aggravated robbery, with firearm specifications, for a July 28, 2008 incident at a Pizza Hut; (4) one count of receiving stolen property regarding a credit card stolen from Spencer Morgan during the incident at Grandad's Pizza; and (5) one count of receiving stolen property regarding credit cards stolen from Scott Ackerman and Melissa Otero during the Pizza Hut incident. Appellant pleaded not guilty to the charges, and a jury trial ensued.

At trial, the parties stipulated that an armed robbery occurred on July 8, 2008, when three men entered Grandad's Pizza and stole money from the business and money, credit cards, and cell phones from four people present. According to the stipulation, one credit card, stolen from Morgan, was used at a bar shortly after the robbery. In addition, the parties stipulated that on July 22, 2008, two armed men entered a CVS Pharmacy and stole drugs and money. Lastly, the parties stipulated that on July 28, 2008, two armed men entered a Pizza Hut and stole money from the restaurant, and cell phones, credit cards, and money from eight people present.

Marcellus Henry was one of the armed perpetrators in each of the aggravated robberies, and he testified as follows. On July 8, 2008, Henry, appellant, Toris Richardson, and three other men agreed to rob Grandad's Pizza. Appellant provided guns and the car for the robbery. Afterward, appellant was given a portion of the stolen money because he provided the guns and the car. Additionally, appellant and Richardson were given the stolen credit cards.

Next, appellant came up with a plan to steal drugs from a pharmacy, and Richardson and Henry agreed to the plan. After scouting for a pharmacy to rob, they decided on a CVS Pharmacy. Richardson recruited Odulex Leger to assist them. On July 22, 2008, appellant drove Richardson to the pharmacy, and they met Henry and Leger. Appellant and Richardson stayed in the car watching for police while Henry and Leger went inside with guns, which appellant provided. After the robbery, everyone met at appellant's house, where Leger and Henry split the money stolen from the pharmacy, and appellant and Richardson kept the drugs.

On July 28, 2008, Henry and Leger decided to rob a Pizza Hut. They went to the restaurant in appellant's car with the guns they previously obtained from appellant. After the robbery, Leger and Henry went to Richardson's apartment, where the stolen items were split among Henry, Leger, Richardson, and appellant, although appellant was not present. Richardson left to go pick up appellant at a bar, and Leger and Henry remained. The police later arrived and arrested Leger and Henry.

Henry had no "doubt in [his] mind" that appellant "knew what was going on" with the robbery-ring they were participating in. (Tr. Vol.I, 114.) Henry, Richardson, and appellant were not working, and they were "supporting" themselves with the robbery proceeds. (Tr. Vol.I, 116.)

Leger testified that appellant and Richardson lived in the same apartment complex and were very close friends. He also confirmed his involvement in the aggravated robberies at the CVS Pharmacy and Pizza Hut.

Richardson testified that he planned robberies and recruited others to execute them, and he said that appellant helped him with robberies in 2008. He admitted to participating in the CVS Pharmacy robbery with appellant, Henry, and Leger. He also testified that Henry came up with the idea to rob Grandad's Pizza. He claimed that he gave Henry a gun for the robbery, but Henry used his own car. He said that appellant received no proceeds from the robbery because he was not involved in it.

Richardson also testified that, on July 28, 2008, Henry and Leger approached him with the idea of committing a robbery. Richardson contacted appellant about allowing Henry and Leger to use his car, and appellant agreed. At one point, Richardson testified that appellant "knew in advance that [Henry and Leger] were using the car for a robbery." (Tr. Vol.II, 284.) But, other times, Richardson indicated that appellant only knew that Henry and Leger were using the car to search for a place to rob and that appellant was never contacted when the men decided to rob a Pizza Hut while on that search.

Henry and Leger returned to Richardson's apartment after the robbery at the Pizza Hut, and the stolen money was divided among Henry, Leger, Richardson, and appellant, although appellant was not there at the time. Richardson said that he received a share for supplying guns for the robbery and that appellant received a share for supplying guns and the car.

Richardson also received credit cards stolen during the incident, and he called appellant, who was at a strip club, and asked him if he knew of anyone who would take the credit cards. Appellant said, "yeah, just come on down here." (Tr. Vol.II, 289.) Richardson, joined by two women, picked appellant up. Later, the police stopped the vehicle those individuals were in, and Richardson was arrested for driving without a license and for being in possession of the credit cards stolen during the Pizza Hut incident. Lastly, Richardson testified that he did not give appellant his share of the money or the credit cards stolen during the Pizza Hut incident because he was arrested before he had an opportunity to do so.

> Columbus Police Officer Kareem Kashmiry stopped the vehicle Richardson was driving and he confirmed at trial that Richardson was in possession of credit cards stolen during the Pizza Hut incident. Detective Brian Boesch verified that those credit cards belonged to Ackerman and Otero.
>
> Before deliberations, the trial court instructed the jury that appellant "may be convicted of all counts and specifications as an aider and abettor." (Tr. Vol.II, 518.) The jury found appellant guilty of all charges, but it failed to find that the receiving stolen property offense, pertaining to Morgan, involved a credit card. The trial court sentenced appellant to prison and informed him that for his receiving stolen property convictions, the "period of post-release control could be for as much as three years" and that the aggravated robbery convictions carry mandatory post-release control for a period of five years. (Tr. Vol.III, 8.) The court also noted that the parole board could send appellant back to prison if he violated post-release control.
>
> Appellant signed a notice of imprisonment on the date he was sentenced. The form indicated that the "Court hereby notifies" appellant that if he violates a post-release control condition, the parole board may impose a prison term for up to nine months "and the maximum cumulative prison term so imposed for all violations during the period of post-release control cannot exceed one-half of the stated prison term originally imposed." And, in its sentencing entry, the court stated that it notified appellant that he would receive a period of post-release control for five years and that "if he violates post-release control his sentence will be extended administratively in accordance with State law."
>
> Appellant appeals, raising the following assignments of error:
>
> [I.] The state's evidence is not sufficient to sustain Mr. Williams' convictions for aggravated robbery and receiving stolen property in Counts 6 through 16 of the Indictment.
>
> [II.] Mr. Williams' convictions for aggravated robbery are against the manifest weight of the evidence

*State v. Williams*, No. 10-AP-1042, 2011 WL 4033855, at *1-3 (Ohio App. 10th Dist. Sept. 13, 2011). On September 13, 2011, the Ohio Court of Appeals sustained in part Petitioner's first

4

assignment of error as it relates to his fifteenth count of receiving stolen property,[1] but otherwise affirmed Petitioner's convictions and sentence, and remanded the case to the trial court for re-sentencing. *Id.* On February 1, 2012, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Williams*, 131 Ohio St.3d 1439 (2012).  On December 22, 2011, the Franklin County Court of Common Pleas re-sentenced Petitioner pursuant to the remand of the state appellate court to an aggregate term of twenty-one years.

On April 4, 2012, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  On July 12, 2012, however, the appellate court denied that application as untimely. *Exhibits 14, 16 to Return of Writ*.  Petitioner apparently did not file an appeal to the Ohio Supreme Court.

On February 7, 2013, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]  He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States asserting the evidence is constitutionally insufficient to sustain his convictions on robbery and receiving stolen property.  It is the position of the Respondent that these claims lack merit.

---

[1] The appellate court stated as follows:

> [A]ppellant challenges his conviction for receiving stolen property pertaining to Morgan's stolen credit card. The trial court treated the conviction as a felony and sentenced appellant to 12 months imprisonment for it. Appellant contends that the offense is a first-degree misdemeanor, which carries a maximum penalty of 180 days in jail, because the jury failed to make a specific finding that the stolen property was a credit card. Plaintiff-appellee, the state of Ohio, concedes that the trial court must be required to enter a judgment convicting and sentencing the receiving stolen property offense as a first-degree misdemeanor. We agree, based on *State v. Pelfrey*, 112 Ohio St.3d 422, 2007–Ohio–256. For all these reasons, we overrule in part and sustain in part appellant's first assignment of error.

[2] Petitioner executed the petition on January 28, 2013.  PageID #16.

## II. MERITS

**A.     Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

> Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

*Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, 123 S.Ct. 2527 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76, 123 S.Ct. 1166 (2003)); *see also Harrington*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's

decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (en banc)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

**B.     Claims One and Two**

Petitioner challenges his aggravated robbery and receiving stolen property convictions related to robbery of Pizza Hut, and as charged in Counts six through fourteen and sixteen of the *Indictment* against him. The state appellate court rejected this claim as follows:

> [A]ppellant argues that his convictions are based on insufficient evidence. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997–Ohio–52. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; *State v. Yarbrough,* 95 Ohio St.3d 227, 2002–Ohio–2126, ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact.

*Jenks* at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks*, paragraph two of the syllabus; *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim).

First, appellant challenges his aggravated robbery convictions for the July 28, 2008 incident at Pizza Hut, in which Henry and Ledger robbed the business and individuals. Aggravated robbery occurs when someone uses a deadly weapon while committing or attempting to commit a theft offense. R.C. [§] 2911.01. The prosecution alleged that appellant was guilty of the aggravated robberies at the Pizza Hut under a complicity theory because he aided and abetted Henry and Leger in their commission of those crimes. To prove aggravated robbery by aiding and abetting, the prosecution must show that "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 245, 2001–Ohio–1336. Participation "'in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Id.*, quoting *State v. Pruet*t (1971), 28 Ohio App.2d 29, 34. "'Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act.'" *State v. Philpot*, 10th Dist. No. 03AP–758, 2004–Ohio–5063, ¶ 26 (citations omitted).

Appellant claims that he did not share in Henry and Leger's intent to commit the aggravated robberies, but, instead, only acquiesced to them using his car to find a place to rob. Richardson testified, however, that appellant knew that Henry and Leger were going to use his car to commit the aggravated robberies. Although appellant challenges the credibility of Richardson's testimony about that knowledge, questions of credibility are irrelevant to the issue of whether there is sufficient evidence to support a conviction. *See State v. Preston–Glenn*, 10th Dist. No. 09AP–92, 2009–Ohio–6771, ¶ 38.

Nevertheless, contrary to appellant's contentions, when he permitted Henry and Leger to use his car, he demonstrated his encouragement and support in the execution of the aggravated robberies from the earliest stage of events. In fact, he provided this permission after having already given Henry and Leger guns.

>Also, the participants reserved some of the proceeds from the crimes for him, due to his involvement, and he agreed to assist Richardson with passing along credit cards stolen during the incident.
>
>Consequently, the evidence, construed in a light most favorable to the state, establishes that appellant aided and abetted Henry and Leger in committing aggravated robberies at the Pizza Hut. Therefore, there is sufficient evidence to support appellant's convictions for those robberies.
>
>Next, appellant challenges his conviction for receiving stolen property based on the credit cards stolen from Ackerman and Otero during the Pizza Hut robberies. R.C. [§] 2913.51(A) defines receiving stolen property and states that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
>
>Richardson obtained the credit cards stolen during the Pizza Hut robberies because of his involvement in that incident. Although appellant agreed to help Richardson pass the credit cards along to others, Richardson was arrested before he had an opportunity to relinquish them. Therefore, appellant argues that his receiving stolen property conviction cannot stand because he never obtained the credit cards. Appellant was prosecuted under principles of complicity, however. We apply those principles, as stated in Johnson, to determine whether appellant aided and abetted Richardson in receiving the stolen credit cards.
>
>Appellant played a crucial role in Richardson's receipt of the credit cards through his assistance with the implementation of the Pizza Hut robberies, which yielded the credit cards. And appellant agreed to participate in those crimes with knowledge that Richardson took proceeds from robberies he was involved in. Accordingly, the evidence, construed in a light most favorable to the state, establishes that appellant aided and abetted Richardson in receiving the credit cards stolen from Ackerman and Otero during the Pizza Hut robberies. Therefore, there is sufficient evidence to support appellant's conviction for receiving stolen property based on those stolen credit cards.

*State v. Williams,* 2011 WL 4033855, at *3-5.

Petitioner raises the same arguments here as he did before the state appellate court.  He argues that no evidence reflects his involvement in the Pizza Hut robbery or receipt of the credit cards obtained from that incident.  In support of this argument, Petitioner contends that he was not present at the time of the robbery, not involved in the planning of the robbery, and that the only evidence linking him to the crime constitutes the offenders' use of his car.  Petitioner further contends that the firearms they used, which were his, were provided some time before the date of the robbery, and therefore do not serve to link him to those crimes.  Petitioner has included portions of the trial testimony in support of his claim.

A criminal defendant may be convicted consistent with the United States Constitution only if the evidence adduced at trial is sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty."  *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume even if it does not appear on the record that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *Id*. (quoting *Jackson*, at 326).

Further, this Court must afford a "double layer" of deference to state court determinations about the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, established by *Jackson v. Virginia,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential

11

elements of the crime beyond a reasonable doubt." Even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Here, for the reasons addressed by the state appellate court, when viewing all of the evidence in the light most favorable to the prosecution, as this Court is required to do, the evidence is constitutionally sufficient to sustain Petitioner's convictions. Testimony of co-defendants indicated that Petitioner provided his car and guns for use in the robbery, and that in payment, he was to receive proceeds from the robbery, including the credit cards stolen on that date. These facts, under Ohio law, are sufficient to establish he aided and abetted in the July 2008 Pizza Hut robbery and receiving stolen property from the proceeds of that offense. The fact that police arrested the co-defendants before they gave Petitioner payment for his assistance in that crime, or that Petitioner did not know that the Pizza Hut would be the specific target of on the date of the robbery does not indicate, under the standard set forth in *Jackson,* that the evidence is constitutionally inadequate on these charges.

Petitioner's claims lack merit.

### III. RECOMMENDED DISPOSITION

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DENIED** and that this action be **DISMISSED.**

### IV. PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


Date: April 7, 2014                                    /s/ *Elizabeth A. Preston Deavers*
                                                       Elizabeth A. Preston Deavers
                                                       United States Magistrate Judge